Filed 12/12/22  P. v. Guzman CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALEXIS GUZMAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B313211<br>(Super. Ct. No. 1312678)<br>(Santa Barbara County) |

Alexis Guzman appeals an order denying his petition for resentencing under former Penal Code section 1170.95 (hereafter section 1170.95),[1] renumbered as section 1172.6, effective June 30, 2022, with no change in text.  (Stats. 2022, ch. 58, § 10.)  The trial court issued an order to show cause and held a second-stage hearing under section 1170.95.  The court found the People had proved beyond a reasonable doubt that Guzman was guilty of second degree murder.  It found Guzman was a direct aider and abettor of "second degree implied malice murder."  We conclude,

---

[1] All statutory references are to the Penal Code.

among other things, the court did not err in denying his petition and substantial evidence supports the court's findings.  We affirm.

FACTS

Guzman and his brother Dennis Garcia Guzman (Dennis) were West Park gang members.  Northwest is a rival gang in Santa Maria.  One evening Guzman and Pedro Pozos, another West Park gang member, were in an alley that the West Park gang claimed as its gang's territory.

Hector Perez and Jose Jarquin arrived in a car.  They were drinking and playing loud music.  Perez was not a gang member. Guzman asked Perez to lower the volume.  Perez increased the volume.  Guzman and Perez traded insults.  Perez told Guzman that he was "just like" his brother Dennis and needed "help" when he fights.

Guzman sent a text message to Javier Mendez, his fellow gang member, stating, "Hey fool, bring the knife."  Guzman texted Dennis asking him to "come by, this fool is from Northwest," and he texted Mendez again stating, "Come by fool we are going to do something right now."  Guzman sent a text message to his girlfriend stating that he was "about to beat some fool right now."

Dennis obtained a .25 caliber Beretta semi-automatic pistol.  He told fellow gang member Luis Ruiz that Northwest gang members were in the alley and he did not want to get "caught naked."

Dennis arrived at the alley.  There were now five or six West Park members or associates who had assembled there. Dennis challenged Perez to a fight.  He handed the gun to Guzman, who held it as Dennis and Perez fought.  Perez

2

prevailed in the fight. At one point at least one West Park gang member tried to help Dennis fight Perez.

Dennis and his fellow West Park gang member were not able to defeat Perez. Dennis retrieved the gun from Guzman and fired shots at Perez. Perez was hit twice by bullets. He died from those injuries. Guzman and Dennis fled.

Guzman and Dennis were convicted of first degree murder. (§§ 189, 187.) The jury found a gang enhancement allegation was true–that the murder was for the benefit of a criminal street gang. (§ 186.22, subd. (b).) Both were sentenced to aggregate state prison terms of 50 years to life. In 2013, we affirmed their convictions. (*People v. Guzman* (July 24, 2013, B232497) [nonpub. opn.].)

In a habeas proceeding in 2015, the trial court found that the jury had been instructed on the natural and probable consequences doctrine, and Guzman's first degree murder conviction was not valid. In lieu of retrial, the People accepted a reduction of Guzman's conviction to second degree murder. His sentence was reduced to 40 years to life.

In 2019, Guzman filed a petition for resentencing under section 1170.95. The trial court issued an order to show cause for a second-stage section 1170.95 hearing. The parties elected not to introduce additional evidence and to rely on the trial transcripts.

The trial court denied the petition. It found, among other things, that Guzman was guilty of second degree murder because he "directly aided and abetted the murder committed by the actual shooter under an implied malice theory." Guzman was "aware of the risk to Perez's life" and he acted "with conscious disregard of that risk." Before the shooting, he indicated "there

3

would be a gang fight" and he urged a fellow gang member to bring a knife, showing his "conscious disregard" for life. "These prefight events frame and highlight [Guzman's] mindset during the fight and at the time of the shooting." He "passed the gun to the direct shooter immediately before the fatal shots were fired." Guzman "intended to aid the shooter." "[R]ather than seek help, express concern for the victim's well-being, or show surprise or remorse, [Guzman] fled." "The court is convinced beyond a reasonable doubt that [Guzman] acted at least with implied malice when he directly aided and abetted the direct shooter."

DISCUSSION

*Resentencing under Section 1170.95*

The origin of section 1170.95 was the passage of Senate Bill No. 1437 in 2018. (Stats. 2018, ch. 1015, § 4.) Senate Bill No. 1437 " 'amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 417.)

A defendant convicted of murder may file a petition under section 1170.95 alleging he or she " 'could not be convicted of first or second degree murder' " because of changes to the law required by Senate Bill No. 1437. (*People v. Gutierrez-Salazar, supra*, 38 Cal.App.5th at p. 417.) If the petitioner has made a prima facie showing that he is entitled to resentencing relief, the trial court will issue an order to show cause for a second-stage hearing. The court will then make independent findings on the evidence and decide whether to resentence the defendant. An appellate court

4

reviews those findings for substantial evidence and draws all reasonable inferences in favor of the trial court's decision. (*People v. Crosswhite* (2002) 101 Cal.App.4th 494, 507-508.)

### *Direct Aider and Abettor Implied Malice Murder Liability*

Senate Bill No. 1437 eliminated liability for second degree murder based on a natural and probable consequences theory.

Guzman contends the legal theory of direct aider and abettor implied malice murder is now invalid. He claims the trial court therefore erred by denying his petition and finding he is guilty of second degree murder. We disagree.

In *People v. Gentile* (2020) 10 Cal.5th 830, 850, our Supreme Court held second degree murder may be based on a "direct aiding and abetting theory." "Such a theory requires that 'the aider and abettor . . . know and share the murderous intent of the actual perpetrator.' " (*Ibid.*) "For implied malice, the intent requirement is satisfied by proof that the actual perpetrator ' "knows that his conduct endangers the life of another and . . . acts with conscious disregard for life." ' " (*Ibid.*)

The trial court found the enactment of Senate Bill No. 1437 did not invalidate or eliminate second degree murder liability based on a direct aider and abettor implied malice murder theory. The court said, "[N]otwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing *can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.*" (*People v. Gentile, supra,* 10 Cal.5th at p. 850, italics added.)

Guzman contends *Gentile* is no longer valid law. We disagree. He argues the Legislature enacted Senate Bill No. 775

5

which "expanded the scope of section 1170.95 beyond felony murder and the natural and probable consequences doctrine." He claims it invalidates murder convictions "based on any 'other theory under which malice is imputed to a person *based solely* on that person's participation in a crime.' " (§ 1170.95, italics added.)

But direct aiding and abetting implied malice murder does not impute malice "solely" on the defendant's participation in a crime. Malice can only be found if the defendant "knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*People v. Gentile*, *supra*, 10 Cal.5th at p. 850.) Moreover, as the People correctly note, Senate Bill No. 775 did not change the definition of murder from the definition found in Senate Bill No. 1437. In *Gentile*, the court noted that Senate Bill No. 1437 provided that "[m]alice *shall not be imputed* to a person *based solely* on his or her participation in a crime." (*Gentile*, at p. 84, italics added.) Both Senate Bill Nos. 1437 and 775 have the same imputing malice prohibition. *Gentile* is current law. "[T]here is no indication the Legislature intended to abrogate the concept of aiding and abetting implied malice murder as mentioned in *Gentile*." (*People v. Glukhoy* (2022) 77 Cal.App.5th 576, 591.)

*Substantial Evidence*

Guzman contends there is insufficient evidence to support a finding that he is guilty of second degree murder on a direct aider and abettor implied malice theory.

"We review the trial court's factual findings for substantial evidence." (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1022.) We draw all reasonable inferences in support of the judgment, and we do not resolve credibility or evidentiary conflicts. (*Ibid*.)

Guzman claims he was a bystander who merely watched a fight and the shooting.

The People claim Guzman's analysis of this issue is incomplete because he cites to a limited portion of the record.  We agree.  "In reviewing the trial court's findings, we analyze the totality of the circumstances."  (*People v. Owens, supra,* 78 Cal.App.5th at p. 1023.)  "The trial court properly considered *all of the evidence* in determining appellant acted with reckless indifference."  (*Id.* at p. 1025, italics added.)

*Knowing and Reckless Indifference to Human Life*

The People claim the trial court could reasonably find Guzman was a major participant who knew he endangered Perez's life and acted with a conscious disregard for life.  (*People v. Gentile, supra,* 10 Cal.5th at p. 850.)  We agree.

Guzman was not a bystander.  He coordinated and initiated a dangerous gang fight with Perez, who was unarmed.  He intended to initiate that fight because of Perez's insults.  Guzman sent text messages to a fellow gang member, asking him to bring a knife, and stating, "Come by fool we are going to do something right now."  He sent a text message to Dennis stating that Perez "is from Northwest."  Believing that a rival Northwest gang member was involved, Dennis obtained a semi-automatic pistol.  Guzman's state of mind shows he intended a violent attack.  He texted his girlfriend stating he was "about to beat some fool right now."  The trial court properly considered Guzman's state of mind before the shooting to find that he intended to aid the shooter at the time of the shooting.  (*People v. Owens, supra,* 78 Cal.App.5th at pp. 1023, 1025.)  Before Dennis and another West Park member fought Perez, Dennis handed the gun to Guzman.  Guzman held the gun for his brother, the actual shooter.

7

Guzman contends the trial court erred by finding that he *passed* the gun to Dennis who used it to kill Perez. The People do not disagree. They note Dennis went to Guzman and *took the gun* that Guzman was holding for Dennis. But this will not change the result because, as the People note, the trial court could reasonably infer Guzman "intentionally aided the perpetrator of the shooting, Dennis, *by holding the gun* for *safekeeping* during the fistfight, and relinquishing possession of the gun once it was apparent Dennis was losing that fight." (Italics added.)

### *Increased Risk of Death Because of Gang Cultural Factors*

The trial court could reasonably infer Guzman's actions involved the "risk of death" because they further a violent gang cultural requirement. (*In re Scoggins* (2020) 9 Cal.5th 667, 676.) West Park gang member Luis Ruiz testified West Park gang members must do "whatever needs to be done for [the] gang," including "fighting, stabbing, shooting for the benefit of the gang." The alley where the shooting took place was designated as territory "controlled by West Park." To be "down" with the gang, a West Park gang member must make the gang "look good." Fighting and "shooting" make the gang "look good." Other evidence showed that if a gang member is insulted, "they are supposed" to "respond violently to address that insult." Committing a "violent crime" is the "quickest way to earn respect" by the gang. Ignoring an insult to a West Park gang member in gang territory would be a threat to the gang's reputation.

Consequently, holding the murder weapon to assist a fellow West Park gang member fighting a rival is relevant evidence for aider and abettor liability during a gang attack leading to a

shooting. (*People v. Thompson* (2010) 49 Cal.4th 79, 118; *People v. Medina* (2009) 46 Cal.4th 913, 924; *People v. Mackey* (2015) 233 Cal.App.4th 32, 121.) "Reckless indifference" includes assisting " 'another in killing' " to " 'achieve a *distinct aim*, even if the defendant does not specifically desire that death as the outcome of his actions.' " (*In re Scoggins, supra*, 9 Cal.5th at pp. 676-677, italics added.)

The trial court could reasonably infer the "aim," shared by Guzman and Dennis, was to remove Perez as an obstacle to the gang's reputation in its territory (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1161, 1169), and, as the jury found, the killing was for the gang's benefit. (*Ibid*.) The court could reasonably infer Guzman's act of holding the gun aided and abetted Dennis and his gang because: 1) it showed the gang's authority in the alley and intimidated those who would challenge it; 2) it prevented Perez from leaving, forced him to fight surrounded by the gang in its territory; and 3) it allowed Dennis to fight Perez with the knowledge that Guzman held the superior means to prevail if he lost the fistfight and thereby achieve the gang's violent cultural mandate. The court found Guzman and Dennis were *both* "protagonists in the event immediately preceding the killing."

"Reckless indifference to human life is ' "implicit in knowingly engaging in criminal activities known to carry a grave risk of death' " (*In re Scoggins, supra*, 9 Cal.5th at p. 676), particularly where the defendant *increases "the degree of risk* to human life." (*People v. Owens, supra*, 78 Cal.App.5th at p. 1025, italics added.) Guzman increased that risk, consistent with his gang's culture that required a violent response, by summoning fellow gang members for an attack, asking one to bring a knife,

9

stating his desire for violence, and holding the gun to assist the killer.  His intent and malice are shown by his statement to his girlfriend, his motive was revenge, and his actions for his gang's benefit "posed obvious and extreme risks of lethal violence."  (*Id.* at p. 1024; *People v. Samaniego, supra,* 172 Cal.App.4th at p. 1169.)

Here there are multiple aggravating factors that support the finding of ineligibility for resentencing relief:  1) Guzman planned and initiated a dangerous gang confrontation; 2) he was present at the scene; 3) he encouraged a violent attack; 4) he did nothing to reduce the risk of violence; 5) violence was not an incidental result, it was the goal; 6) Guzman knew the risk that fellow gang members would be violent because he asked one to bring a knife and he held the gun for the killer; 7) he and Dennis were the "protagonists in the event immediately preceding the killing"; and 8) after the shooting, Guzman showed conscious disregard for the victim by not calling for help and fleeing the scene.

Evidence about the defendant's conduct after the shooting is relevant on the issue of the defendant's intent.  (*People v. Owens, supra,* 78 Cal.App.5th at pp. 1023, 1025.)  The trial court found Guzman showed no signs of surprise or remorse for the killing.  It could reasonably infer Guzman's post-shooting conduct showed Perez's death was not a result inconsistent with what he intended.

Guzman had the right and opportunity to present evidence of any mitigating factors.  But he elected to present no evidence at the hearing on his petition.  The evidence is sufficient to support the findings.

We have reviewed Guzman's remaining contentions and we conclude he has not shown grounds for reversal.

DIPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

BALTODANO, J.

John F. McGregor, Judge

Superior Court County of Santa Barbara

_____

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.